**AFFIRMED and Opinion Filed October 28, 2020**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00955-CV

**JENNIFER HARRIS, Appellant**

**V.**

**MASTEC NORTH AMERICA, INC. D/B/A MASTEC ADVANCED TECHNOLOGIES, DIRECTV, LLC AND AT&T, INC., Appellees**

**On Appeal from the 160th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-17-05222**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Myers and Evans
Opinion by Justice Burns

Appellant was assaulted by Appellee Mastec North America Inc.'s employee while he was in her home to install DIRECTV service. She asserted claims against her assailant, Ahmad Habibi, Mastec, DIRECTV, LLC, and AT&T, Inc.[1] Harris contends the trial court erred by granting Appellees' respective summary judgment motions, and by denying her motion for continuance and sustaining objections to her late response to one of those motions. We affirm.

---

[1] Mastec North America Inc., DIRECTV, and AT&T Inc. are referenced by their respective abbreviated corporate names.

## BACKGROUND

Jennifer Harris called AT&T to request changing her ATT Uverse cable system to DIRECTV. AT&T, Inc., which owned DIRECTV, subcontracted the in-home installation work to Mastec, which in turn sent its employee, Habibi, to Harris's home.

Habibi arrived in a truck wrapped with an AT&T logo, wearing a uniform bearing AT&T logos. Upon arriving, Habibi progressed from small talk and asking for Harris's assistance with his work, to repeatedly grabbing her, rubbing against her, placing his hands under her dress, struggling with her, touching her butt and breasts, and pinning Harris to a wall and then a bed. Harris was frightened by Habibi, confused by his conduct, and consistently objected to Habibi's assaults. During the struggle, Harris injured her wrist and sustained mental anguish. Harris reported the assault to the local police,[2] and, called the number she had been given on the installation paper-work, which was an AT&T number, to report the assault to AT&T. Eventually, she learned Habibi worked for Mastec, rather than AT&T or DIRECTV.

Harris filed suit and asserted Mastec was vicariously liable for Habibi's assault, and directly liable for negligent hiring, training and supervision and gross negligence. She pleaded negligence and DTPA claims against DIRECTV and AT&T. After the trial court granted summary judgment, first in favor of Mastec,

---

[2] Habibi was criminally charged with a Class A misdemeanor assault.

and then later in favor of DIRECTV and AT&T, the trial court severed the remaining claims against Habibi, which proceeded to a jury trial. Harris now appeals the summary judgments granted in favor of Mastec, DIRECTV, and AT&T.

## DISCUSSION

In six multi-part issues, Harris contends the trial court erred in denying her emergency motion for continuance and sustaining objections to her late response to AT&T and DIRECTV's summary judgment motions, and granting Appellees' traditional and no evidence summary judgment motions. Though an absence of evidence supporting an element common to several of Harris's claims permits collective consideration of most of her issues, we address each below.

### A. Pre-trial orders

Harris contends the trial court abused its discretion in denying her emergency motion to continue the hearing on AT&T and DIRECTV's summary judgment motions and in granting their motion to strike her late response. AT&T and DIRECTV contend no abuse of discretion occurred, but if it had, Harris failed to argue or demonstrate any harm resulting from any such error.

An abuse of discretion governs these docket control rulings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (ruling on motion for continuance subject to abuse of discretion standard); *G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.*,

3

177 S.W.3d 537, 542 (Tex. App.—Dallas 2005, no pet.) (enforcement of scheduling order reviewed for abuse of discretion). An abuse of discretion results from a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Joe,* 145 S.W. at 161. A trial court does not abuse its discretion when some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *Stierwalt v. FFE Transp. Serv. Inc.*, 499 S.W.3d 181, 189 (Tex. App.—El Paso 2016, no pet.) (abuse of discretion test focuses on whether trial court acts without reference to guiding rules or principles.). In conducting our evaluation, we view the evidence in the light most favorable to the trial court's ruling, and indulge all presumptions favoring the ruling. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 687 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

In 2018, the trial court entered an agreed scheduling order that included a January 2019 dispositive motion deadline and an April 2019 trial setting (the "2018 Scheduling Order"). The order did not specify whether a continuance of the trial setting would impact other deadlines. On March 21, 2019, the trial court granted a joint motion for continuance and reset the trial to July 2019 (the "2019 Amended Scheduling Order").[3]

---

[3] Neither the 2019 Amended Scheduling Order, nor the agreed motion referenced any other deadline.

On February 19, 2018 Mastec filed a traditional motion for summary judgment.[4]  Hearings scheduled on that motion were cancelled twice to allow Harris time to obtain additional discovery.  Mastec amended its motion on April 17, 2019 to include a no evidence motion, and noticed the hearing on its motions for May 10, 2019.  Harris filed a timely opposition and response.

AT&T and DIRECTV filed their joint motion for summary judgment on April 17, 2019,[5] and on the next day, provided notice of a June 7, 2019 hearing date for their motions.  Rather than respond to AT&T's and DIRECTV's summary judgment motions, Harris moved to strike them as untimely due to the 2018 Scheduling Order's January 2019 dispositive motion deadline.

The trial court heard and granted Mastec's motion for summary judgment.  About two weeks later, on May 28, 2019, the court heard and denied Harris's motion to strike AT&T and DIRECTV's summary judgment motions.  Three days later Harris sought an emergency continuance of the June 7 hearing date for AT&T and DIRECTV's motions for summary judgment.  Although she was unable to obtain a hearing for her motion for continuance prior to the hearing set on the motions for summary judgment, Harris did not file a response to the summary judgment motions

---

[4]Although Mastec's original and amended motions for summary judgment were, like AT&T and DIRECTV's motions, filed outside of the dispositive motion deadline in the 2018 Scheduling Order, Harris did not move to strike either as untimely.

[5] AT&T and DIRECTV subsequently amended their motions to include a table of contents and table of authorities, but did not change the substance of the motion.

until the evening before the hearing.[6] AT&T and DIRECTV moved to strike the late response, asserting Harris had allowed 43 days to pass without responding to the motions or seeking a continuance. They also argued they were prejudiced by the late filing. At the scheduled hearing, the court granted the motion to strike and AT&T and DIRECTV's motions for summary judgment.

### 1. Harris's motion to strike

In moving to strike AT&T and DIRECTV's motions for summary judgment as untimely, Harris relied on the January 2019 dispositive motion deadline included in the 2018 Scheduling Order. In the trial court, Harris argued the January 2019 dispositive motion deadline was unaffected by the 2019 Amended Scheduling Order, which was silent as to dispositive motions. Here, Harris argues only that the trial court was harsh and unfair in denying her motion to strike AT&T and DIRECTV's motions while conversely granting their motion to strike her response and denying her request for a continuance so as to render her response timely.

The trial court, however, did not grant an extension or otherwise extend any deadline to render AT&T and DIRECTV's motions timely. It enforced its scheduling orders and recognized that because the 2019 Amended Scheduling Order did not include specific language to the contrary, it nullified the 2018 Scheduling

---

[6] The verified motion for continuance stated Harris's attorney would be out of state for expert depositions May 30, 2019 through June 1, 2019 and would not return to her office until June 3, 2019.

Order and its dispositive motion deadline. *See Killam Ranch Properties, Ltd. v. Webb County*, No. 04-08-00105-CV, 2008 WL 4958452, at *4 (Tex. App.-San Antonio Nov.19, 2008, no pet.) (re-setting trial nullifies previous deadlines in prior order) (mem. op.); *J.G. v. Murray*, 915 S.W.2d 548, 550 (Tex. App.—Corpus Christi 1995, no writ) (order resetting trial nullifies deadlines set by docket control order). Cases to the contrary relied upon by Harris deal with scheduling orders or procedures specific to the court at issue which preclude nullification of pre-trial deadlines based on a trial continuance unless the continuance specifically addresses the additional deadlines. *See Holmes v. GMAC, Inc.*, 458 S.W.3d 85, 95 (Tex. App.—El Paso 2014, no pet.); *Sprague v. Sprague*, 363 S.W.3d 788, 800 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *G.R.A.V.I.T.Y. Enterprises, Inc.*, 177 S.W.3d at 542. The trial court did not abuse its discretion in denying Harris's motion to strike AT&T and DIRECTV's motions for summary judgment.

### 2. Harris's motion for continuance and AT&T and DIRECTV's motion to strike

Likewise, we see no abuse of discretion in the trial court's denial of Harris's motion for continuance of the June 7, 2019 hearing on AT&T and DIRECTV's summary judgment motions, nor its order granting appellees' motion to strike Harris's response filed the night before the hearing. Harris contends because the trial court did not overrule her motion to strike AT&T and DIRECTV's summary judgment motions as untimely until May 28, 2019, she had only three days to file a

7

timely response. She argues her absence from the state for expert depositions provided good cause for the requested continuance, as well as for the late filing such that the trial court abused its discretion in striking it.

In comparison, appellees argue Harris had fifty days from the date she received notice of the June 7, 2019 hearing to prepare or file a response, but chose instead to rely on the court granting her motion to strike the summary judgment motion, although that motion was not set until near the deadline for Harris's response. Appellees also assert that the continuance Harris requested would have pushed the summary judgment hearing to, at best, within 26 days of the trial setting which in turn violated the court's published procedures. They also argued the response, filed less than 24 hours before the hearing, was prejudicial.

Because Harris had more than the required notice of the hearing and ample time to prepare a response, and because her late-filed response prejudiced AT&T and DIRECTV, the trial court did not abuse its discretion in denying Harris's motion for continuance and striking her response. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002) (no abuse of discretion in disallowing late response where movant failed to offer any explanation demonstrating mistake or accident); *Stierwalt*, 499 S.W.3d at 191 (no abuse of discretion in denying continuance of summary judgment hearing where plaintiff waited until three days before hearing to seek continuance to obtain discovery it knew, a month before filing

8

its motion, was necessary to defend the summary judgment motion). Moreover, given our resolution of the remainder of Harris's issues, even if we were to conclude the trial court abused its discretion with respect to these docket management orders, we could not conclude Harris suffered any resulting harm. *See* TEX. R. APP. P. 44.1; *see also KMS Retail Rowlett, L.P. v. City of Rowlett*, 559 S.W.3d 192, 197-198 n.5 (Tex. App.—Dallas 2017), *aff'd,* 2019 WL 2147205 (Tex. May 17, 2019) (declining to address the merits of evidentiary objections to summary judgment evidence where appellant failed to allege the evidence probably resulted in the rendition of an improper judgment).

The unfortunate sequence of the relevant hearings—Harris's motion to strike heard just days before AT&T and DIRECTV's summary judgment motions, and no setting for Harris's emergency motion for continuance which was mooted when the court granted AT&T and DIRECTV's summary judgment motions—suggests an order granting Harris's motion for continuance would also have been within the trial court's discretion. We do not, however, substitute our judgment for the trial court's even if we might have reached a different conclusion. *Butnaru*, 84 S.W.3d at 211. We overrule Harris's first issue.

## B. Standard of review regarding summary judgment

Orders granting summary judgment are reviewed de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *De La Cruz v. Kailer*, 526 S.W.3d 588, 592

(Tex. App.—Dallas 2017, pet denied). If no grounds are specified for the ruling, we must affirm on any meritorious grounds on which judgment was requested. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

The legal sufficiency standard that governs directed verdicts also governs no-evidence summary judgment motions. *RTLC AG Prods., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 829 (Tex. App.—Dallas 2006, no pet.). To defeat a no-evidence motion for summary judgment, the nonmovant must produce evidence regarding each challenged element of each challenged claim which "would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.") (internal quotation omitted)). In reviewing a no-evidence summary judgment, we consider evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *De La Cruz,* 526 S.W.3d at 592.

With respect to a traditional motion for summary judgment, we require the movant to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant satisfies this burden, to avoid summary judgment the nonmovant must then demonstrate a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We credit all evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002).

## C.    Summary judgments dismissing Harris's claims

We begin with the trial court's summary judgment in favor of Mastec. Harris asserted Mastec was vicariously liable for Habibi's assault, directly liable for negligently hiring, training and supervising him, and grossly negligent.

### 1.    Vicarious liability claim asserted against Mastec

Mastec contends that vicarious liability does not apply in the face of an employee's intentional tort, here Habibi's sexual assault, because as a matter of law, such conduct falls outside of the course and scope of employment. Harris contends more than a scintilla of evidence creates a genuine issue of material fact regarding whether Habibi was acting within the course and scope of his employment, thus demonstrating the trial court's error in dismissing her vicarious liability claim.

11

Proving an employer's vicarious liability for a worker's negligence requires the plaintiff to show that, at the time of the offending conduct, the worker was an employee and was acting in the course and scope of his employment. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018), *reh'g denied* (Dec. 14, 2018). An objective standard applies to the course and scope question, which focuses on whether in committing the tort, the employee was acting "with the employer's authority and for the employer's benefit. *Id.* at 138–39; *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) (vicarious liability attaches only "when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired."). The employer bears no liability when the employee "deviates from the performance of his duties for his own purposes." *Minyard Food Stores, Inc.*, 80 S.W.3d at 577.

Harris asserts the "primary test" of the course and scope inquiry focuses on whether the employer had the right to control and direct the employee's performance at the time of the offending conduct. But the supreme court rejected an employer's ability to control and direct its employee's work as a factor informing the course and scope inquiry, concluding instead that the inquiry was the defining characteristic of an employment relationship—the first inquiry in the vicarious liability analysis. *Painter*, 561 SW.3d at 131–32. Many of Harris's arguments founder on this point.

12

Neither party, however, disputed Habibi's role as an employee. And Harris's arguments that Habibi's actions inside Harris' home were incidental to his general authority, were in furtherance of Mastec's business, and were for the accomplishment of the object for which Habibi was hired, focus on the basis for his presence in her home, rather than, as discussed below, whether *the assault* was within the scope of his authority, in furtherance of AT&T or DIRECTV's business, and for the accomplishment of installing a satellite television system.

Moreover, Harris's complaint that Mastec failed to prove Habibi acted outside the course and scope of his employment misplaces that burden. Although Mastec sought a traditional summary judgment regarding Harris' vicarious liability claim, it also moved for summary judgment pursuant to rule 166a(i), contending no evidence demonstrated Habibi's assault occurred during the course and scope of his employment. With respect to Mastec's no-evidence motion, Harris bore the burden of providing more than a scintilla of evidence on the challenged element of the claim. *Ford Motor Co.*, 135 S.W.3d at 601. Rather than pointing this Court to evidence creating the fact issue necessary to stave off judgment, Harris argues we should construe "the evidence" she fails to identify, in her favor.[7]

---

[7] Harris's general reference to "the evidence" in support of Mastec's failure to demonstrate Habibi was not acting within the course and scope of his employment presumably refers to the evidence she cited in support of her arguments regarding Mastec's right to direct and control Habibi's performance. But as noted above, control speaks to the employment relationship rather than course and scope.

With respect to the legal question underpinning Mastec's vicarious liability—whether an employer bears vicarious liability for an intentional tort committed by its employee—Harris argues liability arises when the offending conduct was closely connected with the servant's authorized duties, citing *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). She also relies on the undisputed facts that Habibi committed the assault while he was on the clock, at Harris's home, and installing the DIRECTV system he was authorized to install. These facts, however, merely beg the question.

Harris argues *GTE Southwest* imposes vicarious liability when the assault is incidental to the conduct authorized by the employer. As Mastec asserts, however, the correct inquiry focuses on the employee's conduct and whether the intentional tort was "closely connected with the servant's authorized duties" or was instead committed when the employee turned from those duties because of personal animosity. *GTE Sw., Inc.*, 998 S.W.2d at 617–18. In *GTE Sw,* the employer was liable for a supervisor's abusive, harassing, and intimidating conduct in supervising the plaintiffs, where the employer itself defended the incidents at issue as "mere employment disputes." *Id.* at 618. In other words, the employer admitted the employee's tortious conduct was authorized and within the scope of the employment. Likewise, in *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex. App.—Dallas 2003, no pet.) we held "[w]hen an employee commits an assault, it is

14

for the trier of fact to determine whether the employee ceased to act as an employee and acted instead upon his own responsibility." That holding, however, followed our recognition of the predicate general rule ignored by Harris; that the employee's tortious conduct will fall within the scope of employment "when the tortious conduct is of the same general nature as that authorized or incidental to the conduct authorized." *Id.*

The general rule rests upon recognition that intentional torts are generally not within the course and scope of an employee's authority or employment, because assaults are generally "the expression of personal animosity," rather than for the purpose of carrying out the employer's business. *Tex. & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 197, 247 S.W.2d 236, 239 (1952); *see also Thawar v. 7-Eleven, Inc.*, 165 F.Supp.3d 524, 530 (N.D. Tex. 2016). Here, no evidence suggests the assault committed by Habibi was closely connected with any of his authorized duties, or incidental to his authority to install cable services. Instead, as Mastec argues, Texas courts generally reject vicarious liability premised on a sexual assault committed by an employee. *See M.D.C.G. v. United States*, 956 F.3d 762, 769 (5th Cir. 2020) (applying Texas law in holding border agent who legally detained suspected illegal aliens departed from his authorized duties and thereby negated employer's potential vicarious liability when he transported detained individuals to remote locations and physically and sexually assaulted each); *Doe v. The Geo Group, Inc.*, SA-16-CV-

15

173-XR, 2017 WL 835209, at *3 (W.D. Tex. Mar. 2, 2017) (rejecting vicarious liability premised on Texas law for sexual assault of prisoner by guard, even where use of force was authorized in guard's work duties, because the specific use of force at issue was motivated by guard's personal gratification); *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (Neurological examination became only a pretense or means for inappropriate and unauthorized conduct by employee when sexual assault commenced during examination).

Lastly we reject Harris's implicit request that we reverse the trial court's judgment regarding her vicarious liability claim by rejecting settled law to further public policy concerns. In support of her policy arguments, Harris relies on numerous cases from other jurisdictions. Even if, in reliance on those non-binding authorities, we believed the potential benefit of imposing vicarious liability on employers whose employees assault others outweighed the detriments of such a rule, we recognize our tripartite system of government requires that the legislature rather than this Court enact the rule Harris asks us to impose. *See Waak v. Rodriguez*, 603 S.W.3d 103, 111 (Tex. 2020) ("It is certainly not our place to make policy decisions that are for the Legislature to make."). We overrule Harris's fourth issue.

16

## 2. Negligence claims asserted against Mastec

Harris asserted Mastec was directly liable to her for negligence in hiring, training, supervising, and retaining Habibi. Mastec sought both no-evidence and traditional summary judgment on the claim,[8] challenging the existence and evidentiary support for each element of the claim, and, asserting that as a matter of law, it was not liable for Habibi's illegal conduct. In her briefing, Harris argued evidence supported all elements of these claims, including "but-for" causation. Although Mastec's brief focused primarily on foreseeability, we resolve this issue based on the absence of evidence supporting cause-in-fact.

In support of these claims, Harris relies on evidence[9] that Mastec's management: admitted potential misconduct by a technician and involving a customer was foreseeable; admitted it wanted to prevent misbehavior of the type in which Habibi engaged; yet left Habibi alone to complete his work without in-person supervision. She contends this evidence created a fact issue regarding causation.

Mastec performed a pre-employment background check, which included criminal history checks through the First National Criminal File, the Texas

---

[8] Some courts analyze negligent hiring, training and supervision separately; others lump them together. *See Castillo v. Gared, Inc.*, 1 S.W.3d 781, 785 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (discussing link between claim for negligent hiring and negligent supervision or training). Because we are concerned with an element common to each, we need not differentiate between them.

[9] Although she does not refer to these facts in support of her negligence claims, in her statement of facts, Harris also referenced evidence that Habibi had failed to complete and turn in quality assurance forms regarding his own work numerous times and that various other aspects of his work indicated the quality of his performance was poor.

Department of Public Safety, the Federal Criminal Database, the National Sex Offender Registry, a Global Sanctions Search, and a motor vehicle report. Habibi's report showed no incidents. During training with Mastec, employees were warned not to engage in unprofessional contact with customers, a warning repeated in its employee handbook and training materials by which it sought to create a "harassment-free" work-place for its employees and customers. In the approximately five months he was employed by Mastec before the assault,[10] Mastec received no complaints about Habibi and had no reason to believe he, or any other technician it employed, was likely to sexually assault or harass a customer or anyone else.

An employer may have direct liability for an employee's negligent conduct if the employer failed to properly hire, train, or supervise the employee and the plaintiff's injuries arose from the employer's conduct. *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex. App.—Dallas 2005, pet. denied); *Houser v. Smith*, 968 S.W.2d 542, 544 (Tex. App.-Austin 1998, no pet.) (Under certain circumstances, law imposes a duty on an employer to use reasonable care in hiring, training, and supervising its employees). As with any negligence claim, the elements of these claims are 1) a duty owed by the employer to the injured party; 2) breach of the duty; and 3) injury proximately caused by the breach. Two elements comprise proximate

---

[10] Mastec fired Habibi when it learned of the assault and the criminal charges filed against him.

cause; foreseeability and cause-in-fact. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995); *Douglas v. Hardy*, 600 S.W.3d 358, 366 (Tex. App.—Tyler 2019, no pet.) (Proximate cause is "essential element" of "negligent screening, hiring, training, and supervision claims"). Cause-in-fact, or legal cause, justifies the conclusion that the injury sustained "was the natural and probable result" of the negligent conduct. *Doe*, 907 S.W.2d at 477–78 (even if but-for causation exists, "connection between the defendant and the plaintiff's injuries may be too attenuated to constitute legal cause"); *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998) ("cause-in-fact element of proximate cause is met when there is some evidence that the defendant's act or omission was a substantial factor in bringing about injury without which the harm would not have occurred.") (internal quotation omitted)). Where a defendant's conduct furnishes only a condition which makes the injury possible, however, cause-in-fact does not exist. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

> In order to be [the proximate cause] of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. . . . [T]his is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm.

*Id.* (quoting *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991)); *Doe*, 907 S.W.2d at 477–78; *Douglas*, 600 S.W.3d at 368 ("[E]ven if the injury would not have happened but for the defendant's conduct, the connection between the

19

defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause.").

We cannot conclude that any of the evidence relied upon by Harris did more than create a potential condition rendering Harris's injury possible. First, Mastec's desire to prevent employee misbehavior does not speak to causation in any manner; it speaks to Mastec's role as an employer and presumably the desire of all responsible employers. Likewise, the foreseeability that Mastec's employees might engage in "misconduct" [11] generally, absent even the merest scintilla of evidence that Habibi himself was likely to engage in any misconduct, has no bearing on the cause-in-fact of Harris's injury. Indeed, utilizing Harris's logic, misconduct by *any* employee of *any* employer with whom she came in contact would render every employer liable for any inappropriate conduct by its employees, regardless of foreseeability or any other consideration. Here, no evidence suggests an assault was either foreseeable or the natural and probable result of Mastec's employment of Habibi. In the same manner, Mastec's failure to provide an in-person supervisor for Habibi, at most, did no more than furnish a condition by which the assault became possible. We cannot conclude, as a matter of law, that not having an in-person supervisor rendered an assault by Habibi a natural and *probable* result of his

---

[11] We do not imply that an assault is merely "misconduct." Clearly, it is more. But we use the terms Harris used in depositions of Mastec's management and her briefing.

20

employment. Accordingly, we conclude Harris failed to provide more than a scintilla of evidence demonstrating Mastec's hiring, training, or supervision of Habibi was a cause-in-fact of her injury. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc.*, 143 S.W.3d at 799–800 (negligence by medical facility in discharging plaintiff and decedent without having provided adequate mental health care was not cause-in-fact of plaintiff's injuries sustained from car accident while riding in a car driven by decedent who experienced a psychotic episode and drove recklessly to avoid a dog in the road caused car accident); *Doe*, 907 S.W.2d at 477–478 (no cause-in-fact between breach of duty to screen and supervise volunteers, where no evidence suggested any information available through screening would have prevented employer from accepting volunteer who later assaulted patron's grandchild while babysitting); *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 461 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (liability for negligence in failing to prevent the criminal conduct of another requires more than conduct creating an opportunity for the crime to occur); and *Cf. Read*, 990 S.W.2d at 737 (cause-in-fact existed where vacuum salesman raped customer, distributor failed to perform any background check or contact references prior to contracting salesman and would have discovered numerous instances of sexual misconduct by salesman, and would not have hired distributor if it had known of salesman's history). We overrule Harris's fifth issue.

21

Our conclusion regarding Harris's claim for negligence also defeats her challenge to summary judgment dismissing her gross negligence claim. *Haddock v. Gruber*, No. 05-16-01113-CV, 2018 WL 1417453, at *14 (Tex. App.—Dallas Mar. 22, 2018, pet. denied) (mem. op.) (prevailing on ordinary negligence claim is a predicate to success on gross negligence claim). Accordingly, we also overrule Harris's sixth issue.

### 3.      DTPA claims against AT&T and DIRECTV

AT&T and DIRECTV requested no-evidence and traditional summary judgment on each of Harris's claims asserted against them. Two of Harris's issues challenge the trial court's summary judgment in these appellees' favor, regarding only the DTPA claim.[12]

> Harris asserted AT&T and DIRECTV were liable pursuant to the DTPA for
>
> (2) causing confusion and misunderstanding as to the source . . . of . . . services;
> . . . .
> (5) representing that … a person has a sponsorship, approval, status, affiliation, or connection, which the person does not; [or]  . . .
> . . . .
> (7) representing that … services are of a particular standard [or] quality …, if they are of another."

TEX. BUS. & COM. CODE § 17.46(b).

---

[12] Harris voluntarily dismissed her direct negligence claims against AT&T and DIRECTV.

Harris contends that both DIRECTV and AT&T falsely represented Habibi was employed by each of them, and impliedly or expressly represented that their services would not include the sexual assault inflicted on Harris. Appellees challenged several elements of this claim and assert numerous arguments in support of the trial court's summary judgment. Although we agree with several of those arguments,[13] we need address only one. As we did regarding Mastec's potential liability, we conclude no evidence demonstrates the conduct of either AT&T or DIRECTV was a producing cause of Harris's injuries.

The DTPA creates liability only when defendants' actions are the "producing cause" of the plaintiff's injury. Except for foreseeability, "producing cause" pursuant to the DTPA and a negligence claim are the same. *Peeler v. Hughes & Luce*, 868 S.W.2d 823, 828 (Tex. App.—Dallas 1993), *aff'd*, 909 S.W.2d 494 (Tex. 1995) ("Producing causation requires the same factual causation as proximate causation, and only lacks the element of "foreseeability" embraced by the standard of proximate causation."); *Hawthorne v. Huffines Communities, Inc.*, No. 05-12-

---

[13] For instance, generally, the DTPA creates no liability for bodily injury, which is one component of Harris's injuries. *See DiGangi v. 24 Hour Fitness USA, Inc.*, No. 05-04-01119-CV, 2005 WL 1367945, at *2 (Tex. App.—Dallas June 10, 2005, no pet.) (mem. op.). Likewise, if Harris's affidavit had not been stricken, it would nonetheless not have qualified as competent summary judgment evidence in light of Harris's many "belief" statements. *See Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Doe I v. Ripley Entm't, Inc.*, No. 05-18-00470-CV, 2020 WL 57339, at *3 (Tex. App.—Dallas Jan. 6, 2020, no pet.) (mem. op.).

01316-CV, 2014 WL 1676932, at *3 (Tex. App.—Dallas Apr. 24, 2014, no pet.) (mem. op.). Here, all of Harris's evidence in response to AT&T and DIRECTV's no evidence summary judgment motions was stricken, and thus she failed to carry her burden to demonstrate the existence of a genuine issue of material fact. *Doe*, 907 S.W.2d at 481 ("Raising a fact question of producing cause . . . requires some evidence that the defendant's act or omission was the cause in fact of the plaintiff's injury.").

Even if we considered Harris's evidence regarding causation, we would reach the same conclusion. She relies on DIRECTV's contract with Mastec regarding the installation pursuant to which Habibi found his way to her home; AT&T's "symbolic representations" on Habibi's uniform and his truck; and their joint failure to disclose that Habibi was not an AT&T employee. None of that evidence, however, does more than creating, in a remote way, a condition by which Harris's injury became possible. *Compare Hawthorne*, 2014 WL 1676932, at *4 (no cause in fact where defendant's challenged conduct was too remote, factually, from the resulting assault); *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc.*, 143 S.W.3d at 799–800. We overrule Harris's second and third issues.

24

Having resolved each issue against Harris, we affirm the trial court's judgments.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

190955F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JENNIFER HARRIS, Appellant

No. 05-19-00955-CV       V.

MASTEC NORTH AMERICA, INC.
D/B/A MASTEC ADVANCED
TECHNOLOGIES, DIRECTV, LLC
AND AT&T, INC., Appellees

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-05222.
Opinion delivered by Chief Justice
Burns. Justices Myers and Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees MASTEC NORTH AMERICA, INC. D/B/A MASTEC ADVANCED TECHNOLOGIES, DIRECTV, LLC AND AT &T, INC. recover their costs of this appeal from appellant JENNIFER HARRIS.

Judgment entered October 28, 2020